IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TROY CLARK, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:03-CV-357 |
| | § | Judge T. John Ward |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT DRETKE'S ANSWER AND MOTION
FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT**

Troy Clark ("Clark") is a Texas death-sentenced inmate challenging his conviction and sentence in federal habeas corpus proceedings under 28 U.S.C. § 2254. Clark filed a petition for writ of habeas corpus with this Court on March 2, 2004. *See* Docket Entry No. 4. This answer and motion for summary judgment follows. As discussed individually below, Clark fails to demonstrate that he is entitled to federal habeas corpus relief on any of his claims and his petition should be denied.

**CLARK'S ALLEGATIONS**

In challenging his conviction and sentence, Clark raises ten grounds for relief:

1. Trial counsel's investigation and presentation of mitigating evidence at the punishment phase was constitutionally ineffective.

2. Trial counsel's punishment phase closing argument was constitutionally ineffective.

3. The cumulative effect of trial counsel's punishment phase performance violated Clark's Sixth, Eighth, and Fourteenth Amendment rights.

4-5. Trial counsel was constitutionally ineffective at the guilt-innocence phase for opening the door to the admission of evidence of an extraneous murder, which violated due process.

6-7.    Trial counsel was constitutionally ineffective at the guilt-innocence phase for failing to prevent the admission of evidence of an extraneous kidnapping and assault, which violated due process.

8-9.    Trial counsel was constitutionally ineffective at guilt-innocence for failing to request a curative instruction on the trial court's comment regarding Clark's credibility, which statement itself violated Clark's due process right to a fair trial.

10.    The cumulative effect of the violations of Clark's rights violated the Fifth, Sixth, Eighth, and Fourteenth Amendments.

As discussed in detail below, all ten requests for relief fail and are foreclosed by reasonable state court findings and conclusions that are binding on federal habeas corpus review.[1] Consequently, federal habeas relief is unwarranted.

## STATEMENT OF THE CASE

On March 24, 2000, a Smith County jury found Clark guilty of the May 19, 1998 capital murder of Christina Muse. 3 CR 322.[2] *See* TEX. PENAL CODE § 19.03(a)(2). Based on the jury's answers to the special issues, the trial court sentenced Clark to death. 3 CR 333-34; TEX. CODE CRIM. PROC. art. 37.071 § 2(g). On direct appeal, the Texas Court of Criminal Appeals affirmed Clark's conviction and sentence. *Clark v. State*, No. 73,816 (Tex. Crim. App. November 25, 2002) (unpublished opinion). Clark did not petition for certiorari review.

Clark next filed a state court application for writ of habeas corpus. SHTr 1-45. Based on review of the record, the Texas Court of Criminal Appeals adopted the trial court's findings of fact

---

[1]    Copies of Clark's state trial, direct appeal, and habeas corpus records were submitted to this Court on June 14, 2004.

[2]    "CR" refers to the clerk's record transcript of the pleadings and documents filed with the trial court, preceded by volume number and followed by page number. "RR" refers to the reporter's record of transcribed trial proceedings, preceded by volume number and followed by page numbers. "SHTr" refers to the state habeas record followed by page number.

2

and conclusions of law and denied habeas relief.  *Ex parte Clark*, No. 55,996-01 (Tex. Crim. App.

Oct. 1, 2003) (unpublished order).

Clark subsequently filed his federal petition for writ of habeas corpus on March 2, 2004.  *See*

Docket Entry No. 4.  This answer and motion for summary judgment follows.

## STATEMENT OF FACTS

Clark, a drug-dealer-on-parole living in Smith County, Texas, became paranoid that one of

his clients, Christina Muse, was talking too much to the wrong people about his drug dealing

activities.  41 RR 13-16.  On May 19, 1998, while Muse was visiting Clark's house, Clark zapped

her with a stun gun, wrapped her up in duct tape, and stuffed her in a closet.  41 RR 27-36.  Later

that day, Clark took her to the bathroom and instructed his girlfriend, Tory Bush, to bring him a

board.  41 RR 47-48.  Bush then heard a loud whack and, upon entering the bathroom, saw Muse

in the bathtub and a large blood smear on the wall.  41 RR 51-52.  After filling the tub with water,

Clark then instructed Bush to help him hold Muse under the water until she drowned by inhaling

water through her nose.  41 RR 52-55.  Clark then cemented Muse in the bottom of a barrel from his

back yard and covered it with debris.  41 RR 63-64.  The next day, with the help of two unwitting

friends, Clark then loaded the barrel onto the back of Clark's truck and dumped it at a trash pile on

property owned by Clark's elderly landlady.  41 RR68-72.  Three days later, Clark had Muse's car

towed from his property.  41 RR 131.

During the ensuing missing-persons investigation, Clark pointed the finger at one Tracy

Mize, whose body was found floating in a septic tank on the same property where Muse was found

in the barrel.  41 RR 101.  Ultimately, Bush confessed to her involvement with Clark in the murders.

3

Clark was indicted for the capital murder of Christina Muse pursuant to Texas Penal Code section 19.03(a)(2) (murder in the course of kidnapping).  1 CR 4.  At trial, against his attorney's advice, Clark insisted on testifying at the guilt-innocence and punishment phases and instructed his attorneys not to present mitigation witnesses on his behalf.  57 RR 108-11.  In his testimony, Clark repeatedly told the jury that he wanted to receive the death penalty.  58 RR 70, 76.

## ANSWER, MOTION FOR SUMMARY JUDGMENT, AND BRIEF IN SUPPORT

### I.      Standard of Review

Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001) (citing *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 482 (5th Cir. 2000)); FED. R. CIV. P. 56(c).  Rule 56 of the Federal Rules of Civil Procedure applies "with equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.2000) (citing Rule 11, RULES GOVERNING § 2254 CASES; FED. R. CIV. P. 81(a)(2)).  In ruling on a motion for summary judgment, a court views the evidence through "the prism of the substantive evidentiary burden."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 254 (1986).  Thus, the application of the summary judgment standard to a habeas corpus case differs from its application in other civil cases to the extent that habeas' substantive evidentiary rules or burdens differ.

Clark, confined pursuant to a state court judgment, is entitled to federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This federal habeas proceeding is governed by 28 U.S.C. §§ 2241 et.

4

seq. as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Through these provisions, emphasizing the principles of federalism, comity, and finality of

judgments, Congress sought to curb federal habeas corpus review of state criminal convictions. *See*

*e.g.*, *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (acknowledging that, through AEDPA, "Congress

wished to curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions

to the extent possible under law") (citation omitted); *Bell v. Cone*, 535 U.S. 685 (2002) (explaining

that the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law"); *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Montoya v. Johnson*,

226 F.3d 399, 404 (5th Cir. 2000).   Accordingly, under the standards codified in 28 U.S.C. §

2254(d), a federal application for writ of habeas corpus shall not be granted with respect to any claim

that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established federal law, as determined by the Supreme
        Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the
        facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see also Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000) (holding that §

2254(d)(1) controls both questions of law and mixed questions of law and fact, while § 2254(d)(2)

applies to pure questions of fact); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

When applying the "unreasonable application" test, a federal habeas court's focus should be

only on the objective reasonableness of the state court's "ultimate conclusion," rather than on the

method by which the state court arrived at its conclusion. *DiLosa v. Cain*, 279 F.3d 259, 262 (5th

Cir. 2002); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (stating that AEDPA

"compels federal courts to review for reasonableness the state court's ultimate decision, not every

jot of its reasoning"); *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104

(2003) ("[T]he only question for a federal habeas court is whether the state court's determination is

'at least minimally consistent with the facts and circumstances of the case'") (quoting *Hennon v.

Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)).

## II.     The State Court Reasonably Determined That Trial Counsel Was Not Constitutionally Ineffective in its Punishment Phase Investigation and Presentation of Mitigation Evidence.

In his first claim for relief, Clark complains that his trial counsel was constitutionally

ineffective in investigating and presenting mitigation evidence at the punishment stage of trial.

Petition at 4-22.  Specifically, Clark argues that his counsel improperly relied on Clark's firm

directive not to contact or present punishment-phase witnesses.  In support of his claim, Clark

presents billing records from his attorney and his investigator documenting their investigations and

an affidavit from his mother stating that, if permitted, she would have testified regarding Clark's

dysfunctional childhood including alleged child abuse, frequent family moves, substance abuse, and

teasing due to speech problems caused by a cleft palate.  Petition at 8-9.  For purposes of federal

review, Clark exhausted this claim in his state habeas application.  The state courts denied relief on

the bases that, first, Clark's counsel was not deficient for following Clark's directive; and second,

Clark could not demonstrate prejudice in any event given the dubious quality of the proposed

mitigation evidence when weighed against the overwhelming aggravating evidence.  SHTr 128-29.

As discussed below, because the state court determination is reasonable and consistent with

established federal law, Clark is not entitled to relief on this claim.  28 U.S.C. § 2254(d).

## A.      The effective assistance of counsel standard

The purpose behind the Sixth Amendment right to the effective assistance of counsel is to help ensure that the defendant receives a fair trial that produces a just result. *Strickland v. Washington*, 466 U.S. 668, 691-92 (1984).  In *Strickland*, the Supreme Court set forth guiding principles and articulated the now-familiar, two-pronged requirement for establishing and evaluating an ineffective assistance claim—*i.e.*, petitioner must show that counsel's performance was unreasonable under the circumstances, and that counsel's performance prejudiced the defense. *Id.* at 687-88.  "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury" and every effort must be made to reconstruct the circumstances of counsel's challenged conduct from counsel's perspective at the time. *Id.* at 695, 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.  "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions." *Id.*  Importantly, a claim of ineffective assistance of counsel cannot be successfully based upon action or inaction insisted upon by the defendant himself. *See id.*

## B.      Trial counsel followed Sixth Amendment and ABA guidelines within prevailing professional norms and was undermined at every turn by Clark's own self-defeating directives.

With respect to the performance component, the record shows that Clark himself defeated his counsel's multi-faceted attempts to zealously represent him.  For example, Clark insisted on testifying—against the advice of his counsel—both at guilt-innocence and at the punishment stage. 47 RR 47-48.  Not only did Clark testify against his attorney's advice, but in his testimony Clark taunted the jury and repeatedly asked to receive a death sentence.  58 RR70-72, 76.  Further, Clark

refused to allow his counsel to call mitigation witnesses despite his counsel's use of an investigator

and an expert witness.  58 RR 59-60.  As the following colloquy reveals, Clark cannot claim in good

faith that his attorney performed below prevailing professional standards:

| | |
|---|---|
| THE COURT: | I understand you've talked to your attorney about whether or not to testify, is that correct? |
| [CLARK]: | Yes, sir. |
| THE COURT: | Mr. Mims, do you have any questions about that? |
| MR. MIMS: | Yes, sir.  Mr. Clark, you and I talked about this briefly.  Well, actually we've talked about it quite a [bit] over the last few weeks.  You elected to testify at the guilt/innocence portion of the trial against our advice.  I'm talking about Mr. Nash here.  You recall that? |
| [CLARK]: | Yes, sir. |
| MR. MIMS: | You took the stand and you testified.  Also, have we advised you that we don't think it's in your best interest you take the stand at this point in time? |
| [CLARK]: | Yes, sir. |
| MR. MIMS: | Okay.  And notwithstanding that, are you going to go ahead and testify despite counsel's advice not to.  In other words, you want to get up here and tell your story now against the advice of counsel? |
| [CLARK]: | I really ain't got no story to tell.  It's just I want the death penalty. |
| MR. MIMS: | Well, that's not my question right now. |
| [CLARK]: | Okay. |
| MR. MIMS: | My question is:  You're going to get up there and testify against the advice of counsel? |
| [CLARK]: | Yeah. |

8

MR. MIMS:           With respect to your punishment, is that correct?

[CLARK]:            Yeah.

MR. MIMS:           All right.  Is it also true that we have asked you to allow us to subpoena your father, Wilburn Clark, to come up and testify for you, haven't we.  You refused to let us do that?

[CLARK]:            Yes, I did.

MR. MIMS:           Okay.  And also your mother, Cleta Barrington.  We wanted to go get her and bring her from the State facility.  She's in the penitentiary somewhere in Arkansas and bring her in and testify for you.  Do you remember that?  You didn't want us to do that either, did you?

[CLARK]:            No, sir.

MR. MIMS:           Okay.  Have I advised you we have no other witnesses that are willing to come forward and testify in your behalf.  Did we advise of that?

[CLARK]:            The people that have come that I called them, told them not to come.

MR. MIMS:           Yes, sir, in fact, you did call some people and tell them not to come and testify in your behalf, didn't you?

[CLARK]:            Yes, sir.

MR. MIMS:           Okay.  Now, knowing all of that, knowing that it is against the advice of counsel that you take the stand and testify in the punishment hearing, are you going to persist and take the stand and testify truthfully to the jury over here with all the questions that are asked of you today?

                 * * *

THE COURT:        It's up to you.

[CLARK]:            I really, Judge, I just wanted to get up here and tell them I want the death penalty.  That's all I was going to do.  I was going to let Bobby Mims start asking me questions, and I was

just going to tell them.

THE COURT:        Whether or not you wish to waive your rights is up to you.  It
                  is not a decision that your attorney can make.  He can give
                  you legal advice but that is your decision.

57 RR 108-111.  Ultimately, Clark opted to testify.  58 RR 56-77.  When asked about the quality of

his representation, Clark's only complaint was about two witnesses he had requested to testify.  His

counsel clarified that they had investigated those witnesses and determined, as to the first, that she

would not be helpful and was not willing to testify on Clark's behalf, and, as to the second, that she

could not be located.  58 RR 59; *see also* Petition at Exhibit 3 (documenting counsel's retention of

an investigator and detailing the 17-month investigation in Clark's defense).   Clark further

testified—detrimentally—to using and selling cocaine and methanthetamines, 58 RR 65; he repeated

his desire to be given the death penalty, 58 RR 70, 76; and he ultimately regressed into a profane

verbal altercation with the prosecution, 58 RR 75-76.  Counsel for Clark testified at a hearing on

Clark's motion for new trial regarding their efforts to defend Clark and both stated that they felt

Clark was not truthful with them throughout their representation.  61 RR 135, 170, 261.

Binding case law—both pre- and post-*Wiggins*[3]—holds that "when a defendant blocks his

attorney's efforts to defend him, including forbidding his attorney from interviewing his family

members for purposes of soliciting their testimony as mitigating evidence during the punishment

phase of the trial, he cannot later claim ineffective assistance of counsel."  *Roberts v. Dretke*, 356

F.3d 632, 638 (5th Cir. 2004) (citing *Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir. 1984), and

*Felde v. Balckburn*, 795 F.2d 400, 401-02 (5th Cir. 1986)).  This case law is reinforced by Supreme

---

[3]        *Wiggins v. Smith*, 123 S. Ct. 2527 (2003).

Court and ABA guidelines honoring a defendant's constitutional autonomy over the direction of his representation.  *See, e.g.,* Model Code of Professional Responsibility EC 7-26 (1980) (stating that the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer); Model Rules of Professional Conduct Rule 1.2(a) (1989) ("A lawyer shall abide by a client's decisions concerning the objectives of representation.").  In the criminal context, where a defendant's dignity and autonomy are especially important, an attorney's duties and responsibilities are further amplified in the American Bar Association Standards for Criminal Justice ("ABA Standards"), as cited with approval in *Strickland*, 466 U.S. at 688, and in *Wiggins*, 123 S. Ct. at 2536-37.  ABA Standard 4-5.2, entitled "Control and Direction of the Case," which closely tracks the Supreme Court opinion in *Jones v. Barnes*, 463 U.S. 745 (1983), provides that the accused, after full consultation with counsel, has the authority to decide, in part, whether to testify and what witnesses to call.  And although ABA Standard 4-5.2 directs the lawyer to give the defendant the benefit of counsel's advice and experience before the defendant makes any fundamental decisions, ultimately it is the client who has the final say because the decisions are "so crucial to the accused's fate."  ABA Standards 4-5.2 commentary at 201 (3d ed. 1993).

The Supreme Court in *Faretta v. California*, 422 U.S. 806, 817 (1975), decisively affirmed the accused's right to manage and conduct his own defense in a criminal case, as illustrated in the following passages:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. . . . for it is he who suffers the consequences if the defense fails. . . .
>
> . . . .

11

> The right to defend is personal.  The defendant, and not his lawyer or the State, will
> bear the personal consequences of a conviction.  It is the defendant, therefore who
> must be free personally to decide whether in his particular case counsel is to his
> advantage.  And although he may conduct his own defense ultimately to his own
> detriment, his choice must be honored out of "that respect for the individual which
> is the lifeblood of the law."

*Id.*, 422 U.S. at 819, 834.  Clark's counsel performed wholly within constitutional and prevailing professional norms of criminal defense lawyers as set forth in the ABA Standards.  Indeed, to have refused Clark's demands would have violated these fundamental and constitutional principles.

Clark's argument that the failure to interview his mother deprived his attorney of learning the full extent of Clark's background, *see* Petition at 13, ignores the fact that Clark himself could have informed his attorney of his background, including his mother's legal problems, his frequent moves, his being teased as a child, his substance abuse, and his alleged childhood abuse—in total, the complete substance of his mother's affidavit testimony.  Any failure to investigate or present this evidence is wholly attributable to Clark.  Indeed, as fully documented by the record and in compliance with ABA standards, counsel actively used an investigator, fully advised Clark on his tactical recommendations, diligently attempted to present a case on mitigation, zealously cross-examined the State's witnesses, and presented an expert witness on future dangerousness.  57 RR 28-105.

Importantly, Clark makes no claim of incompetence or mental illness to call into question his ability to confer with his counsel or to maneuver the direction of his case.  *See Roberts*, 356 F.3d at 638-40; *Felde*, 795 F.2d at 401-02 (discussing Sixth Amendment implications of following directions from mentally ill defendant); *see also Faretta*, 422 U.S. at 840 ("The system of criminal justice should not be available as an instrument of self-destruction.") (Burger, C.J., dissenting).  In

fact, the trial court specifically found Clark competent to assist his counsel.  61 SR 12-14 (finding Clark competent to testify at his motion-for-new-trial hearing and recalling Clark's competence at the time of trial).  There is no evidence, suggestion, or allegation that Clark was not mentally competent to steer the direction of his case and, thus, Clark is accountable for his chosen trial strategy.  *See Felde*, 795 U.S. at 402; *Autry*, 727 F.2d at 362-63.

Counsel did not advise Clark to proceed at trial in the manner that Clark himself insisted.  Accordingly, because the record wholly documents counsel's disagreement with, but adherence to, Clark's trial decisions, counsel cannot be found to have been constitutionally deficient.

### C.     Notwithstanding Clark's failure to demonstrate deficient performance, he cannot demonstrate prejudice.

This Court need not address the prejudice prong in the absence of a deficiency finding.  Nonetheless, in order to demonstrate prejudice based on uncalled witnesses, Clark "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial."  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  Here, while Clark's mother states she was agreeable to testify, the record indicates that she nevertheless would not have testified at trial based on Clark's documented insistence.  Accordingly, Clark cannot make the necessary showing of prejudice.

But in any event, and alternatively, where counsel is alleged to have been ineffective at the punishment phase, the inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  *Strickland*, 466 U.S. at 695; *Williams v. Taylor*, 529 U.S. 362 (2000).  Beyond

his unsupported allegations of childhood dysfunction, Clark has not presented sufficient evidence to call into question the jury's answer to the mitigation special issue.  For example, Clark has presented no social services, medical, or school records documenting his background; instead, he presents merely the affirmations of his mother.  Compare *Wiggins*, in which postconviction counsel presented a wealth of available documentary evidence chronicling Wiggins' bleak life history, including hospital, foster care, and school records.  *See Wiggins*, 123 S. Ct. at 2532-33.  Clark's evidentiary support pales in comparison—both quantitatively and qualitatively—and is problematic at best because, in addition to containing inadmissible hearsay, the Cleta Barrington affidavit has been obtained without the benefit of cross-examination and an opportunity to make credibility determinations.  *See Herrera v. Collins*, 506 U.S. 390, 417 (1993).  Clark's mother's unsupported hearsay allegations that he was subjected to unspecified physical abuse while living with her brother-in-law are not sufficiently detailed to prove anything.

Clark's evidence is also distinguishable and qualitatively different from the evidence presented in *Williams.*  For example, in *Williams*, the Court emphasized mitigation evidence that demonstrated Williams' good deeds and socially-redeeming qualities such as:

> [P]rison records recording Williams' commendations for helping to crack a prison drug ring and for returning a guard's missing wallet, or the testimony of prison officials who described Williams as among the inmates least likely to act in a violent, dangerous or provocative way.  Counsel failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently when Williams was incarcerated as part of a prison ministry program, that Williams seemed to thrive in a more regimented and structured environment, and that Williams was proud of the carpentry degree he earned while in prison.

*Williams*, 529 U.S. at 396 (internal citations omitted).

In contrast to *Williams*, the omitted mitigation evidence Clark claims should have been

presented offers no good deeds by Clark and no socially-redeeming qualities.  His proffered evidence consists merely of his mother's affidavit attempting to excuse his bad deeds by shifting blame to his dysfunctional childhood.

Thus, even if the jury had learned more about Clark's dysfunctional childhood, given the extent of Clark's criminal background and Clark's request to receive the death penalty, it is not likely that the outcome of trial would have been different.  Specifically, in aggravation, Clark's jury heard of three murders, two other than Christina Muse; they also learned of aggravated assaults, thefts, and drug dealing.  As for mitigation, Clark's jury heard much of the evidence Clark alleges was omitted.  For example, the jury learned of Clark's substance abuse and speech defect through Clark's own testimony, rendering any potential repeated testimony from his mother on those topics cumulative.  47 RR 54-56.  Moreover, the jury could have viewed the fact that Clark was not raised by his mother—who was a prostitute and spent most of Clark's formative years in prison—as a positive factor that would not have lessened his moral culpability for committing multiple murders as an adult.  The jury also heard through the defense's expert witness that Clark had been relatively well-behaved during his periods of incarceration.  And finally, the mere allegation of unspecified physical abuse, without any indicia of proof, does not tip the balance in the aggravating versus mitigating equation.  In sum, Clark has not met his burden of demonstrating prejudice.

As the state court reasonably held in its conclusions of law:

6.  [Clark] has not shown that the information in the affidavit of his mother would have made any difference in the answers the jury made to the special issues in their verdict at punishment.

7.  Trial counsel are not required to violate the wishes of a defendant who wants to keep his mother from being involved in the trial.

\* \* \*

12. [Clark] has failed to show that the result of the trial, at the punishment phase, would have been different if [Clark's] mother had testified.

SHTr 128-29. The state court rejection of this claim is not inconsistent with established federal law on this matter; accordingly, Clark is not entitled to relief on this claim.

### III. Clark's Improper Jury Argument Claim is Procedurally Barred; Alternatively, the State Court Reasonably Determined that Trial Counsel's Punishment-Phase Closing Argument Did Not Rise to the Level of Ineffective Assistance of Counsel.

In his second point of error, Clark complains that his counsel was constitutionally ineffective in his punishment-phase closing argument. Petition at 23-31. Clark exhausted this claim in his state habeas application. The state court rejected the claim on the bases that, first, his claim was procedurally barred for failure to raise the issue on direct review; and second, counsel's argument was strategically justified. SHTr 130. Here, under established federal law, Clark cannot prove that the state court's determination was both incorrect and objectively unreasonable, *see Penry v. Johnson,* 532 U.S. 782, 793 (2001). Therefore, he is not entitled to federal habeas corpus relief. 28 U.S.C. § 2254(d).

#### A. The state court's procedural rejection of this claim bars federal habeas relief under established federal law.

In Texas, all record-based claims not raised on direct appeal are procedurally defaulted. *Ex parte Rojas*, 981 S.W.2d 690, 691 (Tex. Crim. App. 1998); *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998); *see also Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004), *cert. denied*, 124 S. Ct. 2812 (June 7, 2004) (finding the state procedural rule firmly established and regularly

followed as of April 2000).[4]   A federal habeas court should not consider issues of federal law when

a state court judgment plainly rests on an independent and adequate state law ground.   *See Harris*

*v. Reed*, 489 U.S. 255, 262 (1989); *see also Ex parte Groves*, 571 S.W.2d 888 (Tex. Crim. App.

1978), and *Ex parte Goodman*, 816 S.W.2d 383 (Tex. Crim. App. 1991).

In disposing of Clark's claim, the state habeas court concluded, *inter alia*, that Clark's

improper jury argument challenge should have been brought on direct appeal and entered the

following findings and conclusions of law:

### FINDINGS OF FACT

1.      [Clark] did not raise this issue on direct appeal.

2.      The record from the Motion for New Trial, where this issue was specifically
        addressed, was available to [Clark] during his direct appeal.

3.      This issue was *waived* for habeas review by failing to raise it on direct appeal.

* * * *

### CONCLUSIONS OF LAW

---

[4]      Although the Supreme Court in *Massaro v. United States*, 538 U.S. 500, 506 (2003),
held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the
claim from being brought in a later, appropriate proceeding under § 2255," that case is
distinguishable on multiple bases.  First, the Court's holding was limited to § 2255 proceedings not
applicable here.  Importantly, § 2255 proceedings do not come attached with § 2254's expressed
interests in comity and federalism directing federal courts to respect the procedural doctrines of state
courts.  Second, the Court's concern in *Massaro* that the factual record may not be sufficiently
developed, *id.* at 504, does not apply in this case where the trial court held an extensive and detailed
motion-for-new-trial hearing permitting full development of the issue.  Third, the *Massaro* Court's
concern that an attorney who handles both trial and direct appeal is unlikely to raise an ineffective-
assistance claim against himself, *id.* at 502-03, also does not apply in Clark's case since he was
appointed new counsel for the purposes of filing and litigating his motion for new trial and on
appeal.  Fourth, the *Massaro* Court's preference that the trial court is the forum best suited to
developing the facts necessary to determining the adequacy of representation was met in this case,
with the same trial court presiding over the detailed motion-for-new-trial hearing.  *See id.* at 505-06.

1.     The issue is barred for failure to raise the issue on direct review when the record was clearly complete and available for direct review.

SHTr 129-30.

Because Clark failed to raise the claim on direct appeal, his constitutional challenge is procedurally barred under state law. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Clark's default in state court likewise bars him from raising the instant claim in federal court. *Busby*, 359 F.3d at 718-20; *cf. Soria v. Johnson*, 207 F.3d 242, 249 (5th Cir. 2000) (concluding allegation that jury venire did not present a fair cross section was procedurally defaulted by failing to raise the claim on direct appeal). Clark's appellate counsel had notice of the state procedural default at the time of his September 2001 filing of his brief on direct appeal. *See Busby*, 359 F.3d at 719-20 (discussing without deciding the applicable triggering date for application of the *Gardner* rule). Thus, because Clark's direct appeal brief was filed more than a year past the earliest possible triggering date, Clark's claim is indisputably barred. *Id.*

Clark has offered no reason why his improper closing argument claim was not raised on direct appeal. Neither has Clark alleged cause or prejudice for his default. And, in the absence of sufficient "cause" for the default and "prejudice attributable thereto," Clark's instant claim should be dismissed. *Murray v. Carrier*, 477 U.S. 478, 485 (1986). Additionally, as demonstrated below, Clark's claim is without merit. Thus, he  is unable to establish prejudice. Accordingly, Clark's second ground may not constitute the basis for federal habeas relief.

**B.     Alternatively, the state court's substantive rejection of this claim is reasonable and consistent with established federal law.**

Notwithstanding the procedural bar, addressing the merits, the question before this Court is whether the state court properly determined that counsel's closing argument strategy was reasonable

18

given the circumstances of this case. *See United States v. Green*, 882 F.2d 999, 1002-03 (5th Cir.1989). Counsel is afforded significant latitude in this regard. *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir.1998).

Here, the record reflects that counsel performed within the wide range of competent assistance under the circumstances.  Given the bleak state of Clark's case, counsel's closing argument necessarily centered on damage control.  Specifically, counsel was faced with the daunting task of trying to overcome the damage Clark caused to his case by insisting on taking the stand, taunting the jury, asking for the death penalty, refusing to permit mitigation witnesses, and arguing with the prosecution.  Counsel was further faced with overwhelming evidence of his client's guilt of not one but three murders. He also faced evidence of Clark's admitted drug use and drug dealing and guilt of various felonies, including aggravated assaults and thefts.

Against these damaging factors, counsel's closing argument attempted to re-direct the jury to answering the special issues in accordance with the evidence and not in answer to Clark's challenge to execute him.  As counsel explained in Clark's motion-for-new-trial hearing:

> Q.    I want to speak with you about the closing argument phase of the trial.  Mr. Clark has complained of the closing argument that you did.  Let me just ask you first of all generally, was that a strategic decision that you and Mr. Mims and, to some degree, Mr. Clark made prior to the time that the arguments took place?
>
> A.    Entirely a strategic decision.
>
> Q.    Can you explain to this Court what the strategy was and why you took the approach that you did in the argument?
>
> A.    Yes.  The last actual full trial day we had, we went late into the evening as I recall because of the Court wanting to finish up through the punishment evidence, and I believe we were on surrebuttal.  The defendant decided to take the witness stand to explain I believe an item of evidence which was a

little piece of plastic which the state was maintaining was a crack pipe and the defendant was claiming it was not. It was simply a piece of trash, I think.

He took the witness stand and during the cross examination by Mr. Skeen, Mr. Clark made certain statements which I think either challenged the jury or almost tried to incite the jury to give him the death penalty, and I was extremely crest fallen after that happened because I saw all this effort that we had put into the case in trying to mount a rather aggressive defense being washed down the tubes. I thought he was basically acquiescing to whatever verdict the jury would give him and had already given him, as far as the conviction was concerned. I was very depressed, very saddened. I was, I was not angry with the defendant. I expressed that to him. Very disappointed in him. And Mr. Mims and I went across the street to the little cigar bar, Jakes, it is. Had I would say, probably five beers each and we got to discussing the case. I think we sat down and had dinner as well.

The question was how to handle that, that testimony by Mr. Clark with the jury in the box about, about wanting the death penalty. I asked Mr. Mims to let me handle the closing argument which would have been kind of a departure from the format because up until that time, Mr. Mims had handled all the jury argument, both opening statements and some closing summations.

We discussed what to do with it and basically decided on that we had to challenge the jury and get the jury to, get the jury to thinking that perhaps Mr. Clark was wanting the death penalty, was trying to manipulate the jury into giving him the death penalty and, therefore, the jury should not buy into it. This should be their decision and not something that the defendant should foist upon them. We, at least I thought that — I termed it a spectacle, but that spectacle had to be addressed. It couldn't go unanswered.

Q.     The spectacle — I don't mean to interrupt you, but the spectacle you're referring to is the testimony of the defendant?

A.     Correct. That that testimony had to be addressed. It couldn't be left unanswered because I thought it would be a point of deliberation with the jury, and we decided to basically use some kind of reverse psychology with the jury that, that their decision to give him the death penalty should be made a little more difficult than the defendant's simply saying go ahead and give me the death penalty because I resign myself to what I consider inevitable, that it shouldn't be so inevitable and that's how I framed the argument.

Q.     Did you discuss this with Mr. Mims?

A.     Oh, yes.

Q.     Did he concur that it was a prudent strategy not in the normal case but in a case in which your client had testified not once but twice over your objection and performed the spectacle that you've described before this Court?

A.     Prudent wouldn't be the term I would use.  I don't think we had much of — I don't believe we had very many options.  I thought Mr. Clark had painted us into a corner, and it was going to be very difficult to extract ourselves from what I thought was a done deal.

Q.     The strategic decision that you made was brought about by the defendant testifying over your objection and causing a spectacle, which you described as a spectacle from which you felt like you had to respond?

A.     Exactly.

Q.     To which you had to respond?

A.     Exactly.

Q.      Mr. Nash, thank you.

61 RR 246-49.  Co-counsel, Mr. Mims, also testified at the hearing:

Q.     The next thing I want to talk to you about is the closing arguments that you did when Mr. Nash began the closing arguments.  And as I recall the closing arguments, what Mr. Nash did was basically to indicate that the jury did not have to like Mr. Clark to afford him the benefit of the application of the law. Is that essentially what Mr. Nash was attempting to do?

A.     Mr. Nash has taken quite a bit of criticism over his final argument and yet we had discussed how are you going to handle it after — you had to sit in the courtroom, as ya'll did.  How are you going to handle this?  He wanted to make the final argument and obviously I had planned on it, but how were you going to handle it?  Well, he's got up.  He's essentially asked for the death penalty.  He didn't, he's not a likeable guy.  The jury has seen all the evidence.  He's not a likeable guy.  We're not going to sit up here and say, hey, he's such a great guy that he shouldn't deserve the death penalty.

What we're trying the sell the jury on the fact that he's not going to be a future danger because he's locked up for forty years minimum and that he had been incarcerated very successfully before with little or no violence

21

. . . . Just lock him up and keep them out of what we all think as society.  That was the theory of the argument.  It was planned.  It wasn't something that just came off the top of Mr. Nash's head.

Q.    There was no attempt on the part of you or Mr. Nash to intentionally or even to recklessly set up an ineffective assistance of counsel complaint based on the closing argument?

A.    No, not at all.

Q.    The decision to attempt to basically not prop Mr. Clark up and to sort of suddenly vilify Mr. Clark, but yet say someone even like Mr. Clark is entitled to protections of the law and is entitled to a no answer if he won't be a future threat incarcerating him forty years was a legal strategy that you all agreed on?

A.    Yes, and it's also we talked about this.  Your credibility with a juror is enhanced when you can see the reality and you try to have that one or two arguments that you can have to save the fellow's life.  I mean, I've gone to enough of these death penalty seminars now that I mean that's one of the strategies that is given.

61 RR 162-64.

Under these circumstances, the habeas court reasonably found that counsel could not be held ineffective for basing his argument upon his strategic choices.  SHTr 129-31.  With respect to this issue, the state court entered the following conclusions of law:

2.    There was a legitimate trial strategy employed during the closing argument to re-direct the attention of the jury from [Clark's] challenge to execute him to their duty to evaluate the evidence when answering the special issues.

3.    [Clark] has failed to establish a reasonable alternative course of action that trial counsel could have taken which would have caused a different result in the jury's responses to the special issues, especially in light of the challenge [Clark] gave to the jury to execute him.

4.    [Clark] has failed to show that the argument trial counsel did make was actually injurious to [Clark], after the jury heard all of the evidence and the testimony of [Clark] that he wanted the jury to send him to death row.

5.      Trial counsel did not abandon [Clark] but tried to represent him in the only way possible after the manipulative display by [Clark] on the witness stand the day before had closed all other usual and reasonable courses of action.

6.      [Clark's] challenge to the jury did not relieve the jury of its duty to consider all of the evidence, but did focus their decision to properly include the character of the Defendant and the circumstances of the offense.

7.      Trial counsel attempted to direct the jury to the evidence, away from the challenge by [Clark] which relieved the jury of focusing on its duty to return a particularized verdict, and put the burden back on the jury to make a reasoned response to the evidence.

8.      [Clark] was not abandoned by trial counsel.

9.      Trial counsel did not fail to provide effective assistance under the circumstances created by [Clark].

10.     There is no reasonable alternative course of action at closing argument which could have been taken which would have achieved a different result in the verdict.

11.     There was no showing that there was ineffective representation of counsel in this case.

12.     [Clark] has failed to show he is entitled to relief on Claim 2.

SHTr 130-31.

Although Clark may now wish that counsel had made a different closing argument, or that counsel had emphasized other defenses or arguments, "a counsel's decision to pursue one course rather than another is not to be judged by hindsight," and the fact that a particular strategy may prove to be unsuccessful does not by itself establish ineffective assistance. *Gray v. Lucas,* 677 F.2d 1086, 1094 (5th Cir. 1982).

In considering counsel's argument in its full context, the state habeas court correctly determined that counsel reasonably attempted to "re-direct the attention of the jury from [Clark's]

23

challenge to execute him to their duty to evaluate the evidence when answering the special issues."

SHTr 130. The fact that the argument was not ultimately successful does not demonstrate

constitutionally ineffective argument—particularly under Clark's circumstances where Clark asked

to receive a death sentence.  As explained above, counsel had few options at his disposal given

Clark's own failure to cooperate and the damaging evidence of Clark's extensive criminal

background.  The state court's rejection of this claim was neither incorrect nor unreasonable under

the circumstances.  Accordingly, Clark is not entitled to relief on this claim.

## IV.     The State Court Reasonably Rejected Clark's Meritless Claim of Cumulative Error Consistent with Established Federal Law.

In his third issue, Clark complains that the cumulative effect of counsel's punishment-phase

performance deprived him of his constitutional rights under the Sixth, Eighth, and Fourteenth

Amendments.  Petition at 32-33.  Clark exhausted this claim on state habeas review, and the state

court rejected the claim on the basis that Clark "failed to show that there was a cumulation of errors

which amounted to a constitutional deprivation of counsel."  SHTr 132.  This conclusion is

reasonable and consistent with federal law.  As discussed above in the preceding two claims, Clark's

claims are either procedurally barred, conclusory, or without merit.  Thus, there are no errors to

cumulate.  *See Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (holding that "[m]eritless claims

or claims that are not prejudicial [or claims that are procedurally barred] cannot be cumulated,

regardless of the total number raised") (citation omitted); *Mullen v. Blackburn*, 808 F.2d 1143, 1147

(5th Cir. 1987) ("Twenty times zero equals zero.").

The Fifth Circuit's standard recognizes cumulative error analysis only when: (1) the

individual errors involved matters of constitutional dimension rather than mere violations of state

law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process. *Westley*, 83 F.3d at 726.  Because Clark has failed to establish constitutional error, this claim for relief should be denied. *See Derden*, 978 F.2d at 1454.

**V.      Clark is Not Entitled to Relief on His Claim that Counsel Rendered Ineffective Assistance by Opening the Door to an Extraneous Offense; Neither is Clark Entitled to Due Process Relief in the Trial Court's Admission of the Evidence Because His Claims are Procedurally Barred on Independent and Adequate State Law Grounds. Moreover, the State Court's Alternative Rejection of These Claims is Reasonable.**

In his fourth and fifth claims, briefed together, Clark complains that his trial counsel was ineffective for opening the door to extraneous offense evidence admitted during guilt-innocence, the introduction of which violated Clark's right to due process.  Petition at 33-37.  Clark exhausted these issues for purposes of federal review in his state habeas application.  The state court rejected the claims on the alternative bases that, first, his claims were procedurally barred based on Clark's failure to raise the issues on direct appeal; and, second, counsel was not ineffective, nor was due process violated, because the extraneous offense evidence was permissibly introduced for strategic impeachment purposes.  SHTr 133-35.  Because the state court determination is reasonable and consistent with established federal law, Clark is not entitled to relief on these claims.

**A.      The state court's procedural rejection of this claim bars federal habeas relief under established federal law.**

Clark's claims are procedurally barred on independent and adequate state law grounds. Despite the fact that Clark fully developed the underlying facts supporting his Sixth Amendment and due process claims in the hearing on his motion for new trial, *see* 61 RR 148-51, 179-81, 185, Clark

did not raise the instant constitutional claims on direct appeal.[5]  As discussed in Section III.A.,

above, in Texas, all record-based claims not raised on direct appeal are procedurally defaulted.  *Ex

parte Rojas*, 981 S.W.2d at 691; *Ex parte Gardner*, 959 S.W.2d at 199; *Busby*, 359 F.3d at 719

(finding the state procedural rule firmly established and regularly followed as of April 2000).  A

federal habeas court should not consider issues of federal law when a state court judgment plainly

rests on an independent and adequate state law ground.  *See Harris v. Reed*, 489 U.S. at 262.

In disposing of Clark's fourth and fifth claims, the state habeas court concluded that Clark

should have raised these claims on direct appeal and entered the following findings and conclusions

of law:

**FINDINGS OF FACT**

1.      This issue was developed at the hearing on the Motion for New Trial but was
not presented for review on direct appeal.

2.      The record, necessary for review, was complete before [Clark] filed his direct
appeal.

3.      [Clark] has *waived* the issue of the effectiveness of trial counsel because he
failed to raise this claim on direct appeal despite a complete record available
for appellate review.

* * * *

**CONCLUSIONS OF LAW**

1.      The facts necessary to resolve these issues were developed at the hearing on
the motion for new trial and having failed to raise them on direct review,
[Clark] is barred from habeas review of these issues now.

---

[5]      Clark did raise an evidentiary claim on direct appeal alleging that the trial court erred
in admitting extraneous offense evidence in violation of the Texas Rules of Evidence.  *See Clark v.
State*, No. 73,816, slip op. at 7-14.  Under established law, however, this is not sufficient to exhaust
the issue for purposes of federal habeas review.  *See Baldwin v. Reese*, 124 S. Ct. 1347, 1351-52
(2004).

SHTr 133-34.

Because Clark failed to raise his claims on direct appeal, his constitutional challenges are procedurally barred under state law. *Ex parte Torres*, 943 S.W.2d at 475. Clark's default in state court likewise bars him from raising the instant claims in federal court. *Busby*, 359 F.3d at 718-20. Clark has offered no reason why his claims could not have been raised on direct appeal. As with his second claim, in the absence of sufficient "cause" for the default, Clark's instant claim should be dismissed. *Murray v. Carrier*, 477 U.S. at 485. Additionally, as demonstrated below, Clark's claims are without merit. Thus, he is unable to establish prejudice. Accordingly, Clark's fourth and fifth grounds may not constitute the basis for federal habeas relief.

**B.**   **Notwithstanding the procedural bar, the state court reasonably rejected Clark's Sixth Amendment and due process claims on the merits.**

**1.**   **The state court reasonably determined that counsel's strategic decision to open the door to an extraneous offense at guilt-innocence was not constitutionally ineffective.**

As background, Clark was originally indicted for two separate capital murder offenses, the instant case and another case involving the murder of one Tracy Mize, whose body was discovered floating in a septic tank on the same property where Christina Muse was found in the barrel. Before trial, Clark received a favorable ruling on a motion in limine designed to prevent the State from introducing evidence of the Mize murder at guilt-innocence. 33 RR 28. Later, during the State's direct examination of Tory Bush, who was an eyewitness to the offense, the State elicited testimony that Clark had encouraged Bush to mislead authorities on Muse's disappearance by placing the blame on two other people, who Bush did not name but stated that they were both dead at the time of trial. 41 RR 101. On cross-examination, defense counsel attacked Bush's credibility by showing

27

that she had given authorities multiple inconsistent explanations on Muse's disappearance.  41 RR 141-42.  Counsel then specifically elicited Mize's name and questioned Bush regarding one of her prior statements placing the blame for Muse's disappearance on Mize.  41 RR 141.  Counsel also inquired into Bush's knowledge of the subsequent discovery of Mize's body and questioned the truthfulness of her final statement implicating Clark in both murders.

Before proceeding on re-direct examination, the prosecutor asked to approach the bench regarding defense counsel's apparent violation of their own motion in limine.  41 RR 148.  The State argued that Clark had opened the door to evidence concerning the Mize murder and sought to rehabilitate Bush's credibility by delving further into the circumstances of Mize's murder in an attempt to demonstrate that Bush lied in her previous statements out of fear of Clark.  41 RR 153.  Thereafter, the trial court permitted the State to introduce the details of Mize's murder subject to granting the defense's request for a Rule 404(b) limiting instruction and overruling the defense's renewed Rule 403 objection.

As in Clark's first two claims, to demonstrate counsel was ineffective, Clark must show that counsel performed below prevailing professional norms, and that any deficiency on counsel's part resulted in prejudice.  *Strickland*, 466 U.S. at 687.  A conscious and informed decision on trial tactics and strategy cannot be the basis for a constitutionally ineffective assistance claim unless it is so ill chosen that it permeates the entire trial with obvious unfairness. *Moreno v. Estelle*, 717 F.2d 171, 176-77 (5th Cir. 1983).

Here, counsel's decision to open the door to admission of evidence regarding the Mize murder was entirely planned and tactical.  *See* 41 RR 157 (discussing defense strategy regarding Mize evidence as reasonable).  In Clark's motion-for-new-trial hearing, defense counsel explained

28

in-depth the defense's conscious tactical decision to impeach Bush with details of Mize's murder:

Q.     Did you discuss with Mr. Clark the fact that it was the consensus of the defense team at some point that despite the fact that you all had filed and argued motions in limine to try to keep the Tracy Mize murder out, that it was strategically in your best interest to go ahead and go into it?

A.     It was a contingent plan.  The plan was, and we talked about this in reference to how can we keep from going into the Tracy Mize allegations that Tory Bush had made and the recovery of the body that had apparently been in the paper quite a bit.  It was our position, as the defense team, if there was a way that we could impeach Tory Gene's testimony — we anticipated what it would be.  It was going to be her last story.  It was, as I recall, five, maybe six different definitive statements that she made to law enforcement before she finally implicated Mr. Clark.

       The motions in limines that were filed both by the State and us, it was our opinion created a very delicate balance.  It was almost, we felt like that if we could effectively impeach her on her last statement by cross examination, then we would pass her without going into that and yet Mr. Nash, Mr. Clark and I all didn't think we would be able to do it and our contingency plan was that if we couldn't, then we had to go into it, go ahead and get it out.

       Indeed, I remember during the discussions and strategy, Tory said, Mims, I don't see how you're going to be able to get into this without going into Tracy's killing and the theory there being, at least from our perspective, is that one person couldn't have killed Tracy Mize.  Had to be two involved in it because of the configuration of the septic tank.

       We did some checking on that particular septic tank and model for an expert.  The lid alone weighed over 300 pounds.  It just was our opinion there's no way a body could be put in there without at least some mechanical device lifting the lid and replacing it.  Therefore, if she's putting herself there at the scene and she's involving Troy Clark, our theory was, then you've got to get into it to show she, if this is true, must have been involved with it, too. That's why we had to go into it and that's why we chose to do it.

       Mr. Clark knew it ahead of time.  It was our contingency plan to do it, if we could not shake her from her statement.

Q.     Would it be fair to say that you figured, you figured that she was more vulnerable on her statement as to the Tracy Mize murder than she was on her

statements as to what happened in the Christina Muse situation?

A.      Beforehand we didn't know.  We were very hopeful, or at least I was, that I would be skillful enough not to violate the motions in limine and open those doors and that she was untruthful.  If she were untruthful, I should be able to cross-examine her off that last statement and at least bring some impeachment.  I was not able to do that and in court at the table we decided — it wasn't cavalierly done, nor was it accidentally done.  We did it as a trial tactic because we knew we were there.

Q.      Was it done with the full consent of the defendant?

A.      Right there we asked him.  Of course, we didn't go on the record or anything because we had the witness on the stand, but I turned to Mr. Nash and Mr. Clark.  I said, okay, we're here.  We're going to open the door.  We're going into Mize.  Are you in agreement?  And everybody was in agreement and we did.  So it wasn't accidental.  It was a necessary trial tactic and it was expected, quite frankly.

61 RR148-50; *see also id.* at 178-79, 184-87.

Because Clark's decision to expose Bush's knowledge and involvement in Mize's murder did not "permeate the entire trial with unfairness," *see* Section V.B.2, below, it cannot reasonably be concluded that counsel rendered deficient performance.  Impeaching Bush with her firsthand knowledge of both murders, plus her multiple lies to the authorities, was necessary to call into question her damaging eyewitness accounts.  The defense's tactic was designed to shift the focus onto Bush as the more culpable party.  Standing alone, counsel's strategy does not constitute deficient performance unless it is so unreasonable that it rebuts the strong presumption that counsel's performance "falls within the wide range of reasonable professional assistance." *Emery v. Johnson*, 139 F.3d 191, 197 (5th Cir. 1997) (quoting *Strickland*, 466 U.S. at 689).  Given Bush's admitted involvement in both murders, this strategy is not so unreasonable as to rebut the presumption of objectively reasonable assistance.  Consequently, Clark's claim fails the first part of the *Strickland*

30

analysis and can be rejected as a matter of law.

However, alleged deficiency aside, Clark cannot prove prejudice. To satisfy *Strickland's* prejudice prong, Clark must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland,* 466 U.S. at 687.  Here, Clark  cannot prove that the result of his trial was unreliable. Clark received the limiting instruction on the Mize murder he requested. 43 RR 62.  Moreover, based on the egregious facts of the Muse offense and the abundant corroborating evidence, the jury would have returned a guilty verdict with or without evidence of Mize's murder.  The state court's conclusion that trial counsel did not fail to provide effective assistance of counsel by trying to impeach the State's primary witness is not contrary to, or inconsistent with, Sixth Amendment principles.  SHTr 135.  Accordingly, Clark is not entitled to relief on this claim.

> **2.    The state court reasonably determined that the trial court properly admitted Clark's extraneous offense evidence and did not deprive Clark of due process.**

Although Clark did not raise a constitutional challenge on direct appeal, the state court thoroughly addressed this claim under Clark's state law evidentiary complaint.  *See Clark v. State*, No. 73,816, slip op. at 7-14.   As summarized by the state court's opinion on direct appeal:

> It is a well-established rule that otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door." [*Bush v. State*, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989).] Although the initial motion in limine was grounded in Rule 404(b) and both parties' arguments discuss that same rule, the trial judge explicitly stated that he was not admitting Bush's testimony under 404(b).  Instead, the judge admitted the testimony "on the issue of [Bush's] credibility" because Clark had opened the door.
>
> . . . . Clark's attack on Bush's credibility opened the door for the State to rehabilitate her with the circumstances of the crime. . . . [T]he State had a legitimate purpose in eliciting the expert testimony.  In proving that Mize was dead and that

Bush suspected that Clark was the killer, the State could show that Bush lied to officials in fear of retaliation by Clark. So the trial court was correct in holding that Clark had opened the door and that the State's evidence did not stray beyond the scope of the invitation.

Even if a door is opened, evidence may still be inadmissible if the danger of unfair prejudice substantially outweighs its probative value under Rule 403. [] Clark did renew his Rule 403 objection . . . . Nevertheless, the danger of unfair prejudice does not substantially outweigh this evidence's probative value. The trial court did not abuse its discretion in admitting it. . . .

*Clark v. State*, No. 73,816, slip op. at 11-13. The state court, on direct appeal, found that the trial court did not violate state evidentiary rules on admissibility. Clark modified his claim on state habeas review by incorporating a constitutional complaint into the trial court's admission of the evidence. Because, however, the trial court did not violate state law, Clark fails to raise a cognizable federal habeas claim.

"In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (citing *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991)). "However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness." *Id.* (citing *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir. 1987)). "Thus, only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted." *Id.* (citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986)); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993) (finding that a federal habeas court "asks only whether a constitutional violation infected the trial").

Insofar as Clark contends that the trial court impermissibly admitted the Mize evidence, such a claim is not cognizable under 28 U.S.C. § 2254. Principles of comity and federalism require this Court to accept Texas' application of its own law. Indeed, the state habeas court recognized that a

constitutional claim is not raised when a state court follows and correctly applies evidentiary rules

as demonstrated in its conclusions of law:

> 7.     The proper introduction of evidence for impeachment purposes does not
> amount to a claim which is cognizable by writ of habeas corpus.

> 8.     There is no constitutional deprivation in the proper admission of evidence for
> impeachment purposes.

SHTr 135.  In terms of fundamental fairness, the Court of Criminal Appeals analogously addressed

the danger of unfair prejudice under Rule 403 in the trial court's admission of the Mize evidence.

Applying a four-point balancing test,[6] the court found that the evidence was not unduly prejudicial.

*State v. Clark*, No. 73,816, slip op. at 12-13.  The state court noted that "the State's need for this

evidence was strong, particularly since there were no alternative means of rehabilitating Bush."  *Id.*

at 13.  The state court emphasized that the trial judge allowed the evidence for the limited purpose

of rehabilitating Bush, and that the State did not stray beyond the scope of the court's ruling.  *Id.*

And finally, the court found that Clark received all of the relief he requested through the submission

of a rule 404(b) limiting instruction.  *Id.*  This holding is not inconsistent with federal due process

---

[6]     As the state court held:

Factors which should go into the Rule 403 balancing test include:  (1) how
compellingly the extraneous offense evidence serves to make a fact of consequence
more or less probable; (2) the potential the other offense evidence has to impress the
jury "in some irrational but nevertheless indelible way"; (3) the time the proponent
will need to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; (4) the force of the proponent's need for this
evidence to prove a fact of consequence, i.e., does the proponent have other probative
evidence available to him to help establish this fact, and is this fact related to an issue
in dispute.

*Clark v. State*, No. 73,816, slip op. at 12 (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.
Criom. App. 1997)).

law.  Indeed, Clark makes no attempt to demonstrate that the state court's rejection of his claim is

contrary to, or inconsistent with, established federal law as required under § 2254.  Accordingly, he

is not entitled to relief on this claim.

**VI.    The State Court Reasonably Determined that Trial Counsel was not Ineffective by Failing to Prevent the Trial Court's Admission of Extraneous Assault-Kidnapping Evidence at Guilt-Innocence; the State Court Further Reasonably Determined that the Admission Did Not Offend Due Process.**

In his sixth and seventh claims, mislabeled as claims five and six, Clark complains that his

trial counsel was ineffective for allowing the introduction of evidence that Clark kidnapped and

assaulted Wesley Crocker, the admission of which offended due process.  Petition at 37-39.  For

purposes of federal review, Clark exhausted these claims in his state habeas application.[7]  SHTr 33-

35.  Because the state court rejection of these claims is reasonable and consistent with established

federal law, Clark is not entitled to relief.

**A.    Trial counsel was not deficient by failing to prevent the admission of evidence that was indisputably admissible.**

As background, before trial, Clark filed a motion in limine requesting that the State approach

and seek a ruling before eliciting evidence of extraneous offenses.  The State made a proffer of the

evidence it expected to be elicited by various witnesses including the kidnapping and assault of

Wesley Crocker, who lived with Christina Muse approximately a month before her disappearance

and who had also previously lived with Clark.  33 RR 29.  Pursuant to the motion in limine, during

Crocker's testimony, the State asked to approach and informed the trial court that it intended to

introduce evidence that Clark had used a stun gun on him and kidnapped Crocker because of a fear

---

[7]     Clark raised an analogous claim on direct appeal complaining that the trial court erred under state law by allowing the admission of the Crocker assault-kidnapping.  *See Clark v. State*, No. 73,816, slip op. at 14.

of "snitching" and because Crocker owed Clark money.  36 RR 81-83.  Clark objected under Rule

403 that the evidence was highly prejudicial.  36 RR 83.  The prosecutor asserted that, given the

numerous similarities between the Crocker offense and the instant case, the evidence was important

to prove identity.  The trial court agreed and ruled that the State could go into the matter because

Clark had raised the issue of identity in the cross-examination of Amber Scroggins.  36 RR 83-84.

Specifically, the defense had inferred that Tory Bush and Amber Scroggins murdered Muse out of

jealousy because their boyfriends were seeing Muse.

Crocker then testified that at Clark's direction Tracy Mize and another man picked him up

from a local club and brought him to the shop of one of Clark's cousins, Blue Barrington.  36 RR

87-88.  Clark arrived and hit Crocker with a tire tool, "busting" his elbow. 36 RR 89.  Clark's

counsel objected and requested and was granted a limiting instruction.  36 RR 89-90.   Crocker then

testified that the assault continued at gunpoint and Clark zapped him with a stun gun multiple times

until Mize told Clark that was enough.  36 RR 93.  Mize was going to take Crocker home, but Clark

said he would take him instead.  36 RR 94.  On the way, Clark made the statement "It's hard  not

knowing whether you're going to live or die." 36 RR 95.  Once they arrived at Crocker's  residence

the assault continued with the stun gun and a wire brush.  36 RR 97.  Ultimately, Clark released

Crocker with the understanding that Crocker would work off his drug debt by working at Clark's

house.  36 RR 101.  Crocker worked the first day but then left town to get away from Clark.  36 RR

110.

Clark cannot prove ineffectiveness under *Strickland* in the trial court's admission of this

testimony.  Counsel properly and timely objected.  Once it became clear that the trial court was

admitting the evidence, counsel properly requested and received a limiting instruction.  Further, the

court's admission of the evidence was found on direct appeal to have been proper.  As the state court

held on direct appeal:

> We cannot conclude that this evidence, though obviously prejudicial to Clark, was unfairly prejudicial, or that any unfair prejudice substantially outweighed its probative value.  The value of the evidence was great since it assisted the State in proving identity, which was a hotly contested issue.  Further, the risk that the jury would use this evidence to decide the case on an improper basis is small.  We conclude that the trial court's decision to admit the evidence was well within the zone of reasonable disagreement.

*Clark v. State*, No. 73, 816, slip op. at 15.

Clark's argument that counsel should have objected during Amber Scroggins' testimony

regarding Clark's use of the stun gun to prevent opening the door to the full details revealed in

Crocker's testimony, *see* Petition at 38, ignores the fact that the trial court did not use this rationale

to admit the testimony.  36 RR 83-84.  The trial court specifically admitted the testimony in light of

defense counsel's reasonable strategy in cross-examining Scroggins to infer that it was Scroggins

and Bush who had murdered Muse, and not because of Scroggins' stun gun testimony.  36 RR 83-84.

Clark makes no argument that counsel was ineffective in attempting to shift blame for Muse's

murder onto Scroggins and Bush.  Accordingly, he has failed to demonstrate deficiency and the state

court's rejection of this claim was reasonable.  As the state habeas court reasonably held:

> 2.  The evidence would have been admissible under any theory or objection trial counsel could have made or which writ counsel has suggested.
>
> 3.  There was no failure of trial counsel to prevent the admission of evidence that was clearly admissible.
>
> 4.  Trial counsel demonstrated that he was not ineffective by realizing that the evidence was relevant and admissible when he attempted to prevent its admission by objecting under Rule 403.

SHTr 136.

Despite the lack of deficiency, in terms of prejudice, the *Strickland* prejudice prong requires that counsel's *errors* prejudice the defense, not the admissible facts of the case. Of course probative evidence is prejudicial; that is what leads to a guilty verdict. Thus, notwithstanding the lack of deficiency, Clark cannot demonstrate the requisite *Strickland* prejudice. Because he has failed to demonstrate that the state court rejection of this claim is incorrect and contrary to established Sixth Amendment principles, Clark is not entitled to relief on this claim.

 **B.** **The state court reasonably determined that Clark could not demonstrate a violation of due process in the trial court's admission of the Crocker assault-kidnapping.**

As in his fifth claim, Clark cannot demonstrate a due process violation in the absence of trial error. *Little*, 162 F.3d at 862 (requiring an antecedent showing of error before a state trial court's evidentiary rulings can mandate habeas relief under the Due Process Clause). Here, the state court on direct appeal held the evidence to have been properly admitted under the Texas Rules of Evidence. *Clark v. State*, No. 73, 816, slip op. at 15. As determined on state habeas review, "[Clark] has failed to make an argument or show authority for the proposition that the introduction of admissible evidence may violate the due process of law." SHTr 136. Clark does not argue that this determination is contrary to, or inconsistent with, established federal law. Accordingly, Clark has failed to show he is entitled to relief on this claim.

**VII.** **The State Court Reasonably Determined that Counsel Was Not Ineffective in Failing to Object to the Trial Court's Admonition that Clark Testify Truthfully; the State Court Further Reasonably Found No Due Process Violation.**

In his eighth and ninth claims for relief, mislabeled as claims seven and eight, Clark alleges that his counsel was constitutionally ineffective for failing to object to a comment the trial court made during the course of Clark's testimony. Petition at 39. Clark further complains that the trial

court's comment amounted to a deprivation of due process.  Petition at 39.  Clark exhausted these

claims in his state habeas application.  The state court rejected the claims on the bases that (1) the

trial court's comment was a proper statement of law and not a comment on the weight of the

evidence or the credibility of the witness, as alleged, thus, counsel performed within the range of

competent assistance in not objecting; and (2) the comment did not violate any federally cognizable

constitutional right.  SHTr 138.  As discussed below, because the state court determination was

reasonable and not inconsistent with established federal law, Clark is not entitled to relief on these

claims.

The state court's findings accurately provide the underlying facts:

**FINDINGS OF FACT**

1.      During [Clark's] testimony at the guilt/innocence phase of the trial, [Clark] claimed that he was not present when Christina Muse was murdered because he was delivering drugs to other people.

2.      When asked by the State to whom he was distributing drugs, [Clark] looked at the trial judge and asked, "I don't want to get anybody in trouble, but I guess I've got to tell the truth."

3.      The trial judge responded, "Yeah, you're supposed to."

4.      Trial counsel did not object.

5.      The record does not reflect that the jurors burst into laughter as [Clark] states nor does he indicate where that may be found in the record.

SHTr 137; *see also* 47 RR 126-27.

**A.      The trial court's admonition to testify truthfully did not warrant an objection.**

This claim is governed by *Strickland*, 466 U.S. 668.  In order to show constitutional

ineffectiveness, Clark must demonstrate that counsel performed deficiently and prejudice resulted.

*Id.*  Counsel cannot, however, be found deficient for failing to make a meritless objection.  *See Clark*

*v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *Koch v. Puckett*, 907 F.2d 524, 526 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

To determine whether counsel should have objected, it must first be determined whether the trial court's comment was in error. Clark complains that the trial judge's response to Clark's question was an improper comment on the weight of the evidence under state and federal law. Petition at 40. The state court, however, rejected this argument and this Court must defer to that determination in the absence of a proper showing of constitutional error. *Pemberton*, 991 F.2d at 1223.

As the State argued on collateral review, in Texas, for the comment of a judge to be a comment on the weight of the evidence, it must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983); *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981). In Clark's exchange with the trial court—"I guess I must tell the truth" . . . "Yeah, you're supposed to"—there is nothing that prejudices the defendant's rights and there is nothing that benefits the State. There is nothing in the response that is improper; it is a correct statement of law that a witness is supposed to tell the truth.

The state habeas court agreed and concluded:

1.     The trial judge did not comment on the weight of the evidence or the credibility of the witness.

2.     The response of the trial judge to the question by [Clark] was a proper statement of law.

3.     There were no grounds for an objection.

4.     Trial counsel was not ineffective for "failing" to object to a response by the trial judge that was not error.

5.      There was no failure of trial counsel.

SHTr 137-38.

These findings mirror federal law.  For example, in *Quercia v. United States*, 289 U.S. 466, 470 (1933), the Supreme Court discussed in detail its concerns surrounding a trial court's discretionary privilege to comment on testimony.   While the *Quercia* Court's opinion can be distinguished on the basis that the decision dealt with a trial court's comment on the facts, whereas here, the trial court commented on the law, it is nevertheless instructive:

> In commenting upon testimony he may not assume the role of a witness.  He may analyze and dissect the evidence, but he may not either distort it or add to it.  His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses.  The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'  This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence' should be so given as not to mislead, and especially that it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided.' . . . . It is important that hostile comment of the judge should not render vain the privilege of the accused to testify in his own behalf.

*Id.* (quoting *Starr v. United States*, 153 U.S. 614, 626 (1894), and *Hickory v. United States*, 160 U.S. 408, 421-23 (1896)); *see also United States v. Dillon*, 446 F.2d 598, 599-601 (5th Cir. 1971) (discussing the limits of fair comment on the facts parallel to *Quercia*).

In the instant case, the trial judge did not analyze the evidence.  Neither did he comment on the facts of the case or the substance of Clark's testimony.  He did not add to or distort Clark's testimony.  Indeed, the trial court's answer to Clark was not unsolicited; the trial court merely and appropriately responded to Clark's direct question to him.  And even if it could be demonstrated that the courtroom erupted in laughter at the trial court's response, it cannot be said that the trial court's plain statement of law was prejudicial or that the court's comment merited objection.

Accordingly, because the trial court's admonition was held to be proper, counsel could not have been deficient in failing to object.  The state court's rejection of this claim is not contrary to, or inconsistent with, Sixth Amendment concerns.  Therefore, Clark is not entitled to relief on this claim.

**B.      The trial court's admonition did not offend constitutional due process concerns.**

Admonishing a witness to tell the truth does not violate the Constitution, and Clark fails to cite to any authority that states otherwise.  The state court held that "[t]here was no error in the response of the trial judge" and properly concluded that the court's comment did not violate a constitutional right and is not cognizable by writ of habeas corpus.  SHTr 138.  This determination is not contrary to, or inconsistent with, established federal law as discussed in the preceding subsection.

On habeas review, the question before a federal habeas corpus court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated.  *See Beazley v. Johnson*, 242 F.3d 248, 261 (5th Cir. 2001) ("[T]he proper interpretation of state law is not cognizable in federal habeas proceedings."); *Pemberton*, 991 F.2d at 1223 (finding that a federal habeas court "asks only whether a constitutional violation infected the trial").

Further, the state court's findings and conclusions are not contrary to, or inconsistent with, federal law.  *See Quercia* and *Dillon*, *supra*.  In the absence of any authority suggesting that a trial court cannot admonish a witness to tell the truth or respond to a direct question with a correct statement of law, Clark has failed to state a cognizable claim for relief.  Accordingly, because the state court determination is not incorrect, Clark is, therefore, not entitled to due process relief on this

41

claim.

**VIII.  The State Court Properly Determined that Clark Failed to Demonstrate Cumulative Error.**

In his final claim for relief, Clark alleges that the cumulative effect of state and federal constitutional and statutory infirmities in Clark's trial violates Clark's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.  Petition at 43.  Clark exhausted this claim in his state habeas application and the state court rejected it.  *See* SHTr 39, 138; *see also Clark v. State*, No. 73,816, slip op. at 15 (rejecting analogous state law claim).  Because the state court rejection is reasonable and not inconsistent with federal law, Clark is not entitled to relief.

As a preliminary matter, this claim is inadequately briefed and should be deemed waived. *See Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002) (citing *Martin v. Cain*, 246 F.3d 471, 475 n. 1 (5th Cir. 2001) (issues not briefed will not be considered)); *see also Trevino v. Johnson*, 168 F.3d 173, 181 n. 3 (5th Cir. 1999) (stating that issues not briefed will be deemed waived).  Clark's petition contains only one paragraph consisting of six lines that merely repeats his state habeas application claim.  Clark fails to allege with any argument, authority, or citation the basis for an entitlement to relief; consequently, the Director is left to infer Clark's arguments and authorities. This is not sufficient to meet the requirement that habeas petitioners must plead with factual detail and particularity the basis for their claims.  *See Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (holding that conclusory allegations unsupported by specific facts are insufficient to support constitutional claims); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").  Moreover, for purposes of federal habeas corpus review under 28 U.S.C. § 2254(d), Clark falls far short of meeting his burden to demonstrate that the state court determination is contrary to, or inconsistent with, established

federal law.  Accordingly, this claim should be considered waived or abandoned.  Indeed, the state

habeas court held the same:

### FINDINGS OF FACT

1.      [Clark] has failed to properly brief this complaint and failed to present facts
        which if true would entitle him to relief.

2.      By failing to properly brief this complaint, [Clark] has *waived* this issue.

3.      There were no constitutional errors in the trial.

[4].    A statutory error is not cognizable by writ of habeas corpus.

[5].    There were no statutory errors which amounted to reversible error in the trial.

### CONCLUSIONS OF LAW

1.      [Clark] has failed to present a cognizable claim.

2.      [Clark's] claim is without merit, apart from the absence of argument or
        authority.

SHTr 138.

On the merits, Clark's cumulative error claim is based on the unsupported premise that

constitutional, statutory, or state law error occurred.  However, as in his third claim for relief, *see*

Section IV, above, in the absence of any individual showing of error, Clark is not entitled to relief.

"Meritless claims or claims that are not prejudicial [or claims that are procedurally barred] cannot

be cumulated, regardless of the total number raised." *Westley*, 83 F.3d at 726; *Mullen*, 808 F.2d at

1147.

Under controlling precedent, cumulative error can be found only when: (1) the individual

errors involved matters of constitutional dimension rather than mere violations of state law; (2) the

errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire

trial that the resulting conviction violates due process. *Westley*, 83 F.3d at 726.  Because Clark has

failed to establish constitutional error, *see Derden*, 978 F.2d at 1454, and because the state court's

alternative rejection of this claim is reasonable and consistent with federal law, Clark is, therefore,

not entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons and in the interests of justice and finality, the Director respectfully

requests that Clark's petition for writ of habeas corpus be denied with prejudice.  Furthermore, since

it is not debatable that the state court's adjudication of Clark's state court claims is not unreasonable

or inconsistent with federal law, no certificate of appealability ("COA") should issue with regard to

any of Clark's claims.  The Director respectfully requests that his summary judgment motion be

granted.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division

_____

* DENI S. GARCIA
Assistant Attorney General
State Bar No.  24027175

* Attorney-in-charge

P.O. Box 12548 Capitol Station
Austin, Texas 78711
(512) 936-1600
FAX (512) 320-8132
deni.garcia@oag.state.tx.us

ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of Respondent Dretke's Answer and Motion for

Summary Judgment with Brief in Support was electronically served pursuant to Local Rule CV-

5(a)(3)C), on August 2, 2004.

Craig L. Henry
Attorney at Law
P.O. Box 3226
Texarkana, Texas  75504-3226
(903) 792-4645
(903) 792-5073 (FAX)

_____

DENI S. GARCIA
Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TROY CLARK, | § | |
|       Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:03-CV-357 |
| | § | Judge T. John Ward |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|       Respondent. | § | |

**ORDER GRANTING SUMMARY JUDGMENT**

On the motion of respondent, summary judgment is GRANTED, the petition for writ of

habeas corpus is DENIED WITH PREJUDICE, and no certificate of appealability shall issue in this

cause.

SIGNED _____, 2004.

_____
T. JOHN WARD
United States District Judge