IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHAL DIVISION



| | |
|---|---|
| TROY CLARK, § | |
| Petitioner § | |
| vs. § | CIVIL ACTION NO. 2:03cv357 |
| DOUG DRETKE, Director § | |
| Texas Department of | |
| Criminal Justice, Correctional § | |
| Institutions Division | |
| Respondent § | |

## AFFIDAVIT OF BOBBY MIMS

**STATE OF TEXAS**

**COUNTY OF SMITH**

   **BOBBY MIMS,** being first duly sworn upon oath, deposes and states:

   1.   My name is Bobby Mims. I am an attorney who has been duly licensed to practice law in the State of Texas since 1978. I was lead defense counsel for Troy Clark ("Troy") at trial of the capital murder charge indicted under cause number 007-81708-98 in the District Court of Smith County, Texas. At the conclusion of the trial, Troy was sentenced to death. I make this Affidavit in support Troy's Application for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 currently pending

under cause number 2:03CV357 in the United States District Court for the Eastern District of Texas, Marshall Division.

2. As lead defense attorney, I made a strategic decision to defend the punishment phase of Troy's capital murder trial by focusing on the "future dangerousness" special issue.

3. Neither I nor co-counsel, Kenneth Nash, attempted to retain a forensic social worker to prepare a social history, even though the State made funds available for that purpose.

4. At the time Troy's case was tried, mitigation practice was almost unknown. Shortly after Troy was sentenced to death, I attended a mitigation seminar at Southern Methodist University held by Niland, Wischkamper and Byington. As soon as the seminar started, I immediately realized that we most likely rendered ineffective assistance of counsel during the punishment phase of Troy's trial. It was simply a lack of training on my part. Moreover, I feel that the mitigation practice in general was embryonic and not well developed as a body of law at the time of Troy's trial.

5. As a result of our lack of training, neither I nor Kenneth Nash attempted to obtain records relating to Troy's past from the following sources:

(a) Birth Certificate;

(b) Birth Records from hospital and physician;

(c) Troy's parent's medical records;

(d) Troy's medical records from childhood and adult years;

(e) Troy's school records, including transcripts or other performance records, testing, conduct, health screening, immunizations, multi-disciplinary assessments and individualized educational plans for every school attended;

(f) Social service agency records for any agency that had provided services to Troy or any member of his family, including welfare or public assistance records, evaluations or testing, counseling, intervention, placement or treatment records;

(g) Employment records for all jobs held by Troy;

(h) Troy's treatment records, including records of any inpatient or outpatient psychiatric, mental health, or alcohol and drug treatment.

6. Nor did we obtain documents and other evidence regarding Troy's background relating to the following:

(a) Information regarding his birth;

(b) Early developmental history;

(c) Make-up of the family unit, including background information on birth parents (date and place of birth, educational attainment, health history, date of marriage, ages at time of marriage, etc.) age and sex of siblings, prior marriages;

(d) Early health of Troy, including whether he suffered any serious accidents, illnesses and injuries;

(e)   Residential history of Troy's family, including where they lived, for what periods of time, and under what conditions;

(f)   Employment history of parents;

(g)   Religious training, practices and beliefs;

(h)   Any significant childhood experiences, including such things as death or serious injury of a family member or other significant person;

(i)   Any family problems relevant to punishment; and

(j)   Any history of running away.

6.   Nor did we conduct any collateral interviews with Troy's parents, siblings, other family members, neighbors, teachers, principles or other school personnel, employers, co-workers, social workers, court personnel (juvenile or adult probation/parole officers), coaches, ministers or other church personnel, or physicians or medical personnel in an attempt to discover potentially mitigating evidence or information.

Further affiant sayeth naught.

Bobby Mims

Subscribed and sworn to before me this 9th day of November, 2004.

[Notary Seal: MELINDA M. CARROLL, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 10-17-2005]

Notary Public,
State of Texas