IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **TROY CLARK**, | § | |
| | § | |
| Movant-Petitioner, | § | |
| | § | |
| | § | |
| -VS- | § | CIVIL NO. 2:03-CV-00357 |
| | § | |
| | § | *CAPITAL CASE* |
| | § | |
| **WILLIAM STEPHENS**, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO
## RULE 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Pursuant to Federal Rule of Civil Procedure 60(b)(6), Petitioner Troy Clark requests relief from the Court's opinion and final judgment granting Respondent's motion for summary judgment and denying him relief on his petition for writ of habeas corpus. Mem. Op., ECF No. 21.

In his petition, Clark, through then-counsel Craig Henry, claimed that his trial counsel had provided him ineffective assistance by failing to investigate or present mitigating evidence. Pet. Writ Habeas Corpus 4-22, ECF No. 4. The ineffectiveness claim raised in federal court was virtually identical to the claim that had been raised by Henry – who also represented Clark during state habeas proceedings – to the Texas Court of Criminal Appeals (CCA). As will be discussed at greater length in the following paragraphs, that claim was presented in a perfunctory and incomplete fashion and, for all intents and purposes, did not amount to a claim at all.

Henry was appointed to represent Clark in state habeas proceedings in April 2000. Exhibit 1 (Affidavit of Craig Henry) at para. 3.  In preparing Clark's state habeas application, filed July 25, 2002, Henry spent a mere five hours interviewing mitigation witnesses and obtained only a single affidavit to support the claim – an affidavit from Clark's mother, Cleta Barrington.  Exhibit 1 at paras. 5, 8.  On October 1, 2003, the CCA adopted the trial court's findings of fact and conclusions of law and denied Clark relief.  *Ex parte Clark*, No. 55,996-01 (Tex. Crim. App. Oct. 1, 2003) (unpublished).

On October 30, 2003, Henry was appointed to represent Clark in proceedings before this Court.  Order, Oct. 30, 2003, ECF No. 2.   Four months later, on March 2, 2004, Henry filed Clark's petition for a writ of habeas corpus.  Pet. Writ Habeas Corpus, ECF No. 4.   In the nineteen months that had passed since his filing of Clark's state habeas application, Henry failed to obtain any additional witness statements, and there is no evidence to indicate he conducted any further investigation of the claim.  As was the case in the state habeas application, the claim raised in federal court pursuant to *Wiggins v. Smith*, 539 U.S. 510 (2003), was supported by a single witness affidavit from Clark's mother.  Pet. Writ Habeas Corpus Ex. 4, ECF No. 4..

Three weeks *after* filing the petition, Henry filed a sealed motion that asked the Court to appoint a mitigation specialist.  ECF No. 7.  This was the first and last time that Henry asked the Court to authorize any funds for any purpose.  Funds were authorized, and Henry hired Shelli Schade, a mitigation specialist with expertise in conducting a *Wiggins* investigation.

Respondent filed a motion for summary judgment on August 11, 2004.  Resp't's Answer & Mot. Summ. J., ECF Nos. 15, 16.  On November 15, 2004, Henry responded to Respondent's motion for summary judgment.  Pet'r's Resp., ECF No. 19.  By the time Henry filed this response, Ms. Schade, the mitigation expert, had completed a thirty-page social history report

based on her review of Clark's records and interviews with five of Clark's family members and letters from additional, unidentified family members. Henry attached this report to his response, and attached as well an affidavit from trial counsel Bobby Mims in which Mims admitted that neither he nor co-counsel Kenneth Nash made any attempt to investigate or present evidence of mitigating circumstances at Clark's trial. While including the Schade report and Mims affidavit in his pleading, the response filed by Henry contains no indication that Henry had retained a mental health expert to evaluate Clark; and in fact, the pleading suggests that Henry did not have Clark evaluated by any type of mental health professional.

This Court denied relief. The Court found that trial counsel's performance at Clark's trial was deficient, but the Court further held that Henry had not demonstrated that Clark was prejudiced by trial counsel's deficiency. Mem. Op. 10, ECF No. 21. The Court granted Respondent's motion for summary judgment but gave Clark a certificate of appealability on the claim. *Id.*; Order Granting Mot. COA, ECF No. 25.

On appeal, a central issue before the Fifth Circuit was whether the Court could consider the Schade Report and Mims affidavit when assessing prejudice. That court, believing it was bound to do so by the Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), ignored the Schade Report and Mims affidavit and considered only the evidence that was presented to the state court – i.e., the statement from Cleta Barrington, Clark's mother – in assessing prejudice. *Clark v. Thaler*, 673 F.3d 410, 419-20 (5th Cir. 2012). In other words, Henry's failure to present the mitigating evidence contained in the Schade report and the Mims affidavit to the state habeas court prevented the Fifth Circuit from considering this important evidence – evidence that transformed Clark's *Wiggins* clam to such a degree that it was no longer

the claim presented to the state habeas court – in its review of whether Clark's Sixth Amendment right to counsel had been violated.

Fifteen days after the Fifth Circuit affirmed the district court's decision denying Clark relief on his *Wiggins* claim, the Supreme Court handed down its decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  Under *Martinez*, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012).  Though he clearly provided Clark ineffective assistance during state habeas, and though that ineffectiveness barred the Fifth Circuit from considering substantial mitigating evidence – evidence that arguably made the *Wiggins* claim a different claim than the one presented to the state habeas court – Henry filed no motion to vacate the Fifth Circuit's opinion or any other pleading arguing the applicability of *Martinez*.  Further, the petition for a writ of certiorari Henry filed on May 29, 2012 did not contain an argument based on *Martinez* and, in fact, made no mention of *Martinez* at all.

Not until August 21, 2013 did Henry inform any court that because of *Martinez* and the Supreme Court's subsequent ruling in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) – which announced the holding of *Martinez* is applicable to Texas cases – other counsel should be appointed "to ascertain whether [he] committed IAC at the state level."  Exhibit 2 (Transcript of August 21, 2013 hearing to set execution date) at 10; *see also Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013) (holding the petitioner was entitled to independent counsel in federal habeas proceedings to investigate and pursue the ineffectiveness of state habeas counsel pursuant to *Martinez*).

Henry should have asked this Court to appoint new counsel as soon as the Supreme Court handed down its opinion in *Martinez*.  Had he done so, and had this Court then appointed new counsel  (as it did when asked to do so in May 2014), new counsel could have filed a motion to vacate the Fifth Circuit's opinion (see *infra* Part II), motion for leave to file a petition for rehearing (the period for filing a timely petition for rehearing expired March 19), or a motion to stay the mandate (mandate issued on March 27).  Henry's failure to do so, coupled with the substantial likelihood that doing so would have enabled new counsel to develop and present the amended *Wiggins* claim counsel now seeks to raise (attached as Exhibit 3) and have the claim and all the supporting evidence heard by this Court and by the Fifth Circuit Court of Appeals, constitute the extraordinary circumstances necessary to justify relief pursuant to Rule 60(b)(6).

## I.  Henry should have asked this Court to appoint new counsel as soon as *Martinez* was handed down.

"[A] lawyer shall not represent a person if the representation of that person reasonably appears to be or become adversely limited … by the lawyer's … own interests."  Tex. Disciplinary Rules Prof'l Conduct R. 1.06(b)(2).  "Loyalty to a client is impaired … in any situation when a lawyer may not be able to consider, recommend or carry out an appropriate course of action for one client because of the lawyer's own interests…."  *Id.* at 1.06 cmt. 4.  "The lawyer's own interests should not be permitted to have adverse effect on representation of a client…."  *Id.* at 1.06 cmt. 5.

Working on Texas capital cases apparently constitutes a substantial portion of Craig Henry's practice.[1]  A finding by this Court that he provided ineffective assistance to Clark could

---

[1] In addition to representing Troy Clark in state and federal habeas proceedings, Henry currently represents Micah Crofford Brown, No. AP-77,019, in direct appeal proceedings, previously represented William Speer in state habeas proceedings, Nos. WR-59,101-01 and WR-

result in his not being allowed to serve as lead trial counsel in any more capital cases, lead appellate counsel in the direct appeal of any more capital cases, or as state habeas counsel in any more capital cases. *See* Tex. Code Crim. Proc. art. 26.052(d)(2)(C), (d)(3)(C); Procedures Regarding Eligibility for Appointment of Attorneys as Counsel Under Article 11.071, Section 2(f), Code of Criminal Procedure at para. 8, *available at* http://www.courts.state.tx.us/courts/pdf/ProceduresCapitalWritsApptList.pdf.   In other words, a finding that Henry was ineffective would result in his not being permitted to do the type of work that currently represents a large component of his practice.

Henry's continued representation of Clark therefore became fatally afflicted by a conflict of interest on March 20, 2012.  On that date, the Supreme Court issued its opinion in *Martinez* and articulated an exception to the *Coleman* doctrine; that exception rendered Henry's ineffectiveness during Clark's state habeas relevant to the federal habeas proceedings, because Henry's ineffectiveness in the state habeas proceedings could, pursuant to *Martinez*, provide a means through which the Schade report and the Mims affidavit could be considered by the Fifth Circuit in assessing whether Clark had been prejudiced by his trial counsel's ineffectiveness. But in order to invoke this exception created by *Martinez*, Henry would have had to concede that he himself had been ineffective during state habeas proceedings; but that concession, as discussed above, would have disqualified him from further capital work.   In short, Henry's own reputational, professional, and pecuniary interest in not being found to have provided ineffective assistance prevented him from representing Clark zealously and pursuing his client's best interests.   His ability to represent Clark compromised, Henry should have immediately asked this Court to appoint new counsel.

---

59,101-02, and previously represented Julius Jerome Murphy in direct appeal proceedings, No. AP-73,194.

Henry must have realized that there was at least a possibility that this Court or the Fifth Circuit would find he provided Mr. Clark ineffective assistance during state habeas proceedings if he made the issue relevant by arguing the applicability of *Martinez*.  *See* Exhibit 2, at 10-11. As is true for trial counsel, the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate one by which to determine whether state habeas counsel provided ineffective assistance.  *Martinez*, 132 S. Ct. at 1318.  Prevailing professional norms require post-conviction counsel "to conduct a thorough and independent investigation relating to the issues of both guilt and penalty."  Am. Bar Ass'n, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.7 (A) (rev. ed. 2003), reprinted in 31 Hofstra L. Rev. 913, 1027 (2003) [hereinafter ABA Guidelines].  "It is necessary to locate and interview the client's family members (who may suffer from some of the same impairments as the client), and virtually everyone else who knew the client and his family, including neighbors, teachers, clergy, case workers, doctors, correction, probation, or parole officers, and others."  Id. at Guideline 10.7 (A) cmt.  The multi-generational investigation of a client's family that counsel is to conduct is to extend "as far as possible vertically and horizontally" including "at least three generations."  ABA Guidelines, Guideline 10.7 (A) cmt. & n.216.[2]

---

[2] While the revised ABA guidelines were adopted in February 2003, they "simply explain in greater detail than the 1989 Guidelines the obligations of counsel to investigate mitigating evidence."  *Hamblin v. Mitchell*, 354 F.3d 482, 487 (6th Cir. 2003).  The Supreme Court has consistently used the ABA's standards and guidelines in capital cases to assess the performance of trial counsel who prepared their cases before the relevant ABA publications had been issued.  In *Strickland*, the Court cited standards published by the ABA in 1980 when assessing trial counsel's performance in 1976-77.  In *Wiggins*, the Court cited the 1989 ABA Guidelines when assessing trial counsel's performance in 1988-89.  In *Rompilla*, the Court used multiple ABA publications from 1980, 1989, and 2003, to assess deficiencies in a 1988 trial.  Finally, in *Nixon v. Florida*, 543 U.S. 175 (2004), the Court used the 2003 Guidelines to assess performance in 1984-85.  Moreover, the 1989 ABA Guidelines similarly required counsel to begin investigation immediately upon counsel's entry into the case and to "discover all reasonably available mitigating evidence."  1989 Guidelines, Guideline 11.4.1.  The 1989 Guidelines also required

Henry's affidavit, Exhibit 1, reveals he spent only five hours interviewing mitigation witnesses while preparing Clark's state habeas application – not even remotely what he was obligated to spend in order to act in accordance with prevailing professional norms. Had he acted as he was professionally required to act, he would have learned not only the information contained in the Schade report, but also all of the other mitigating evidence contained in the amended claim undersigned counsel now seeks to raise, Exhibit 3.

Prevailing professional norms also required Henry to "identify mental-health claims" and select "expert witnesses … with specialized training or experience in a particular subject matter," including but not limited to "[m]edical doctors, psychologists, toxicologists, pharmacologists, social workers and persons with specialized knowledge of medical conditions, mental illness and impairments, substance abuse, physical, emotional and sexual mistreatment, trauma and the effects of such factors on the client's development and functioning." ABA Guidelines, Guideline 10.15.1 cmt., at B; ABA Supplementary Guidelines, Guideline 10.11(E)(1)(a). Henry did not do what was required, and consequently did not learn what he could have learned – facts demonstrating Clark was prejudiced by the ineffectiveness of his trial counsel.

Had Henry spent the time and effort required by professional norms interviewing Clark's family members, he would have learned the true extent of Clark's mother's substance abuse and that she abused alcohol and drugs while pregnant with Clark. He would have been alerted to the need to have Clark evaluated by a mental health professional, who like Dr. Joan Mayfield, would have likely concluded that the deficits in Clark's functioning are "consistent with the research for

---

counsel to retain experts for investigation and "preparation of mitigation." 1989 Guidelines, Guideline 11.4.1.(7).

children who have been diagnosed with Fetal Alcohol Syndrome … and Fetal Alcohol Effects…..." Exhibit 3 at Exhibit D para. 54.

Henry's deficiencies prejudiced Clark in that they prevented the state habeas court and, subsequently, this Court and the Fifth Circuit Court of Appeals from considering the substantial wealth of mitigating evidence contained in the amended claim counsel now seeks to raise when deciding whether Clark received ineffective assistance from trial counsel.

## II.     Had Henry advocated zealously for Clark, there is a substantial likelihood the Fifth Circuit's judgment would have been vacated.

When the Supreme Court handed down its opinion in *Martinez* on March 20, 2012, Clark was similarly situated to Carlos Ayestas.  Like Clark, Ayestas raised a claim pursuant to *Wiggins* in his state habeas application.  The claim Ayestas raised in the state habeas court contained only a small portion of the evidence contained in the one raised in his federal habeas petition.  *Ayestas v. Thaler*, No. 4:09-cv-02999, 2011 WL 285138, at *4-7 (S.D. Tex. Jan. 26, 2011).  Just as the Fifth Circuit did in *Clark*, the district court in *Ayestas* held it was barred from considering the unexhausted evidence presented in Ayestas's federal petition.  *Id.*  The Fifth Circuit denied Ayestas a certificate of appealability on the claim.  *Ayestas v. Thaler*, 462 F. App'x 474, 480 (5th Cir. 2012), *vacated*, 133 S. Ct. 2764 (2013).

Unlike Henry, counsel for *Ayestas* filed a petition for rehearing en banc.  While that petition was pending, the Supreme Court issued its opinion in *Martinez*.  Accordingly, two days after the Supreme Court handed down *Martinez*, counsel for Ayestas filed in the Fifth Circuit a Motion to Vacate and Remand in Light of *Martinez v. Ryan*, arguing that Ayestas should be permitted to return to district court to re-litigate the claim so that the district court and the Fifth Circuit could consider the evidence previously considered procedurally barred. In *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012), however, the Fifth Circuit had held that *Martinez* was not

applicable to Texas cases.  Consequently, on the authority of *Ibarra,* the Fifth Circuit denied Ayestas's motion to vacate and remand. *Ayestas v. Thaler*, 475 F. App'x 518, 518 (5th Cir. 2012).  Thereafter, counsel for Ayestas filed a Petition for a Writ of Certiorari in the Supreme Court that presented the question of whether *Martinez* applied in Texas.

The Supreme Court answered that question on May 28, 2013 when it handed down its opinion in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).  The Court held that *Martinez* applies in Texas.  *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013).  Six days later, June 3, 2013, the Supreme Court granted Ayestas's Petition for a Writ of Certiorari, vacated the Fifth Circuit's judgment, and remanded the case to the Fifth Circuit for further consideration in light of *Trevino*. *Ayestas v. Thaler*, 133 S. Ct. 2764 (2013).  The Supreme Court issued GVR orders in five other Texas cases that day – *Washington v. Thaler*, *Balentine v.Thaler*, *Haynes v. Thaler*, *Gates v. Thaler*, and *Newbury v. Thaler*.  In light of the Supreme Court's order, the Fifth Circuit granted Ayestas's motion to vacate and remanded the case to district court.  *Ayestas v. Stephens*, 553 F. App'x 422, 423 (5th Cir. 2014).

Clark's case was similarly situated to that of Ayestas.  It is therefore probable that, had Henry filed a motion to vacate judgment in the Fifth Circuit as Ayestas's counsel did for his client, the Supreme Court would have vacated the Fifth Circuit's judgment in Clark's case just as it did in that of Ayestas, and that the Fifth Circuit would subsequently have vacated its prior judgment as was done for the similarly situated Carlos Ayestas.  But Henry's own self-interest in not being found ineffective prevented him from pursuing the strategy employed by counsel for Ayestas; it prevented him from zealously advocating on behalf of his client.

### III.    Rule 60(b)(6) is an appropriate vehicle through which Clark should now be allowed to seek relief.

Rule 60(b) authority to reopen proceedings and reconsider a denial of a petition for writ of habeas corpus is equitable and subject to the Court's discretion.  *See Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010) ("Rule 60(b)(6) is a ***grand reservoir of equitable power*** to do justice in a particular case when relief is not warranted by the preceding clauses…") (emphasis added).  To demonstrate "any other reason justifying relief" under Rule 60(b)(6), a petitioner must show "extraordinary circumstances." *See Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).

The Fifth Circuit has delineated eight factors "that should inform the district court's consideration of a motion under Rule 60(b)," including: (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.  These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments. *Seven Elves v. Eskanazi*, 635 F.2d 396, 402 (5th Cir. 1981) (citing *United States v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962)).   These factors strongly weigh in favor of granting Clark the relief he requests.

Clark's request for relief under Rule 60 warrants a brief discussion of the case of Anthony Haynes.  Prior to *Martinez*, Haynes raised an unexhausted *Wiggins* claim in his federal habeas petition. The district court held it was barred from adjudicating the merits of the claim. *Haynes v. Quarterman*, No. 4:05-cv-03424, 2007 WL 268374, at *8 (S.D. Tex. Jan. 25, 2007), *rev'd on other grounds*, 561 F.3d 535 (5th Cir. 2009).  (Alternatively, the court denied the claim on the merits.  *Id.* at *9.)  The Fifth Circuit Court of Appeals agreed with the district court's holding that the claim was procedurally barred.  *Haynes v. Quarterman*, 526 F.3d 189, 195-96 (5th Cir. 2008).  Haynes' execution was set for October 28, 2012. On September 24, 2012, Haynes filed a motion pursuant to Rule 60(b)(6) asking the district court to reopen proceedings in light of *Martinez* and stay Haynes's execution.  Relying on the Fifth Circuit's opinion in *Ibarra* and finding that *Martinez* itself does not constitute an extraordinary circumstance, the district court denied Haynes' motion on October 3, 2012.  *Haynes v. Thaler*, No. 4:05-cv-03424, 2012 WL 4739541, at *4-6 (S.D. Tex. Oct. 3, 2012).   Haynes asked the Fifth Circuit for a certificate of appealability but was denied one on October 15, 2012.  *Haynes v. Thaler*, 489 F. App'x 770, 772 (5th Cir. 2012). But the Supreme Court then stayed Haynes' execution and, on June 3, 2013, granted his petition for writ of certiorari, vacated the Fifth Circuit's judgment, and remanded his case to the Fifth Circuit.   *Haynes v. Thaler*, 133 S. Ct. 2764 (2013). The Fifth Circuit remanded his case to the district court to reconsider its denial of his Rule 60(b) motion. *Haynes v. Stephens*, No. 12-70030, 2014 WL 3703996, at *1 (5th Cir. July 28, 2014).

Although the district court subsequently found that Rule 60 relief is not available for Haynes, and the Fifth Circuit ruled in *Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013)[3] that

---

[3] While the case of Justen Hall is easily distinguishable from Clark's, a panel of the Fifth Circuit of Appeals in an August 27, 2014 unpublished opinion, seems to affirm that the panel

*Martinez* and *Trevino* do not by themselves constitute the extraordinary circumstances required for Rule 60 relief, neither of those developments should preclude Clark from obtaining relief under Rule 60(b), because Clark's claim is significantly different from that presented by either Haynes or Diaz.  Unlike *Haynes* and *Diaz*, counsel for Clark does not argue that the change in decisional law announced in *Martinez* and made applicable to Texas by *Trevino* itself constitutes the extraordinary circumstance required for Rule 60(b) relief.  Instead, the extraordinary circumstance arises from the fact that Henry remained counsel of record for Clark before both this Court and the state habeas court for *seventeen months* following  the Supreme Court's decision in  *Martinez*  despite the fact that his professional, reputational, and pecuniary interests became adverse to his client's best interests the very moment the *Martinez* opinion was handed down.

"The existence of a conflict of interest on the part of the movant's attorney when the judgment as entered can qualify as an extraordinary case justifying Rule 60(b)(6) relief."  *Ames v. Miller*, 184 F. Supp. 2d 566, 575 (N.D Tex. 2002).  Once *Martinez* was decided, Henry had a professional ethical obligation to withdraw from further representation of Clark, and had he acted as he should have and immediately asked the court to appoint new counsel, new counsel would have filed a motion to vacate, and as the procedural history of the *Ayestas* case makes clear, it is probable Clark's claim would have been remanded to this Court just as the *Ayestas* case was remanded to the district court. Henry's interests were in conflict with Clark's before the Fifth Circuit issued its mandate.  Preventing Clark from receiving the opportunity to have his claim reviewed on the merits would constitute a gross miscarriage of justice, and his motion for relief under Rule 60(b) should therefore be granted so as to avoid this injustice.

---

does not believe *Haynes* has altered the holding in *Diaz*.  Hall v. Stephens, No. 14-70013 (5th Cir. Aug. 27, 2014).

**IV.     The amended claim Clark seeks to raise is not a successive petition.**

The successive petition requirements in 28 U.S.C. § 2244(b) only apply to "applications" for habeas corpus. *See Gonzalez*, 545 U.S. at 530.   A Rule 60(b) motion brings a prohibited claim when it: (1) adds a new ground for relief or (2) attacks the federal court's prior resolution of the claim on the merits.  *Id.* at 530-32.  Clark's motion meets the *Gonzalez* criteria because it asks the Court to reopen a claim that was presented in his petition for a writ of habeas corpus. His petition is not successive.

**CONCLUSION AND PRAYER FOR RELIEF**

For the foregoing reasons, Mr. Clark requests that the Court grant his motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6) and permit his petition for a writ of habeas corpus to be amended by the amended claim attached to this motion and permit further briefing on the merits of the claim.

Respectfully submitted,

s/ David R. Dow

_____
David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
100 Law Center
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131

s/ Jeffrey R. Newberry

_____
Jeffrey R. Newberry
Texas Bar No. 24060966
Texas Innocence Network
100 Law Center
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (713) 743-2131

## CERTIFICATE OF SERVICE

I certify that on Friday, September 19, 2014, a copy of the foregoing pleading was electronically served on counsel for Respondent, Stephen M. Hoffman, via an email to Stephen.hoffman@texasattorneygeneral.gov by the electronic case filing system of the Court.

s/ Jeffrey R. Newberry

_____
Jeffrey R. Newberry

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with opposing counsel, Stephen M. Hoffman, in a good faith attempt to resolve the matter without court intervention, and the motion is opposed.

s/ Jeffrey R. Newberry

_____
Jeffrey R. Newberry